IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| STEVEN THOMAS ALLEY, | § § § | |
| *Plaintiff*, | § § | Civil Action No. _____ |
| v. | § § | |
| EASTMAN CHEMICAL COMPANY, | § § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Steven Thomas Alley ("Alley"), files this complaint against Defendant, Eastman Chemical Company ("Eastman") for discrimination and retaliation in employment, and in support thereof would respectfully show the Court as follows:

### I.   PARTIES

1. Plaintiff, Steven Alley, is an individual citizen of the State of Texas and a resident of the Eastern District of Texas.

2. Upon information and belief, Defendant, Eastman Chemical Company, is a Delaware corporation, authorized to do business, and doing business, in the State of Texas. Eastman may be served through its registered agent for service, United Agent Group Inc. 5444 Westheimer #1000, Houston, Texas 77056, or wherever it may be located.

### II.   JURISDICTION AND VENUE

3. This Court has jurisdiction to hear the merits of Alley's claims under 28 U.S.C. § 1331 because Alley asserts claims arising under federal law. Venue is proper in this Court

pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which a substantial part of the events or omissions giving rise Alley's claim occurred.

4. All conditions precedent have occurred or been complied with. A charge of employment discrimination on the basis of age was filed with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission within 180 days of the commission of the unlawful employment practice alleged herein (Charge No. 450-2020-038610). On October 1, 2020 Alley filed a supplemental charge with respect to Charge No. 450-2020-038610 after he discovered Eastman's conduct in violation of the Americans with Disabilities Act. The same day, the EEOC filed a Right to Sue Letter for Charge No. 450-2020-038610 dated September 30, 2020.[1]

### III.   FACTUAL BACKGROUND

5. In August of 2019, Alley was employed at Eastman. At that time, he sought to transfer from an Eastman plant located in Tennessee to an electrical / instrumentation job at an Eastman plant located at 300 Kodak Blvd., Longview, Harrison County, Texas 75602 (the "Longview Plant"). Alley interviewed with two individuals from Eastman for a job at the Longview Plant. During that interview, Alley was asked if he would be willing to train or take classes on new skills. Alley said that he would take whatever training or classes Eastman deemed necessary.

6. In September of 2019, Alley was asked to join the Power Distribution Crew at the Longview Plant. He accepted the position and agreed to report to work on September 30, 2019.

7. Alley reported to work on September 30, 2019. Alley met with his new manager, Chris Gibbs, and his other crew members. The other members of Alley's crew were mostly in

---

[1] In an abundance of caution, Alley also filed a separate additional charge on his disability claim set forth herein (Charge No. 450-2021-00278). The EEOC has not yet issued a right to sue letter with respect to that additional charge.

their 20's, with the exception of the lead man and the control system mechanic. Alley was by far the oldest employee among his co-workers. He also had more tenure by approximately two decades than any of the other employees on his crew.

8. Shortly after starting work at the Eastman plant in Longview, Alley had a meeting with Mr. Gibbs. Alley and Mr. Gibbs discussed the differences between the Tennessee plant, where he previously worked, and the Longview Plant. One of those differences was that crew members in Eastman plant in Tennessee worked in teams, for safety reasons. The Eastman plant in Longview did not use teams for most of their electrical work. During that meeting, Mr. Gibbs expressed that Alley should have retired at his age rather than moving to Texas for work.

9. Instead of training, when Alley started working at the Eastman plant in Longview, He was assigned primarily to accompany other contractors around the Eastman plant in Longview as Eastman's representative. As a result, He did not learn the layout and the operations of the electrical systems in Eastman's Longview Plant.

10. Thereafter, Alley was instructed to follow other crew members and observe their electrical work. Alley asked to follow all crew members that would let him observe and assist, although some crew members refused his company and assistance. Alley asked for additional training and instruction to get up to speed on the skills and knowledge necessary to work at the Eastman plant in Longview. However, Alley was never provided any training or instruction. Additionally, unlike the rest of his crew, he was never assigned a vehicle. Mr. Gibbs told Alley he would have a spare vehicle assigned to Alley, but no vehicle was ever assigned. Alley never received any training, instruction, or classes after he transferred to the Longview Plant.

11. In January of 2020, Mr. Gibbs met with Alley. Mr. Gibbs expressed that he did not know how to categorize what kind of worker Alley was in the crew. During this meeting, Alley

raised concerns that the Eastman plant in Longview was not following a safety rule for all Eastman facilities which required teams of two workers for certain high voltage work. Mr. Gibbs told Alley that was not how work was done in Texas. Alley explained this rule was required for all Eastman sites. During that meeting, Mr. Gibbs again expressed that Alley should have retired instead of moving to Texas to work for Eastman.

12. Shortly after that meeting, Alley was notified by Chuck Stinnett that Eastman was conducting an "investigation" concerning his safety. Alley had not received any disciplinaries or write ups, concerning anything, nonetheless any safety issues. That was the first time anyone at Eastman had expressed that Alley was somehow unsafe. Alley was suspended with pay by Mr. Stinnett. No one interviewed Alley about the alleged "investigation." Alley thought this was unusual based on what he understood about Eastman's disciplinary policies.

13. However, on January 18, 2020, David Reed, an HR representative at Eastman wrote an email to John Maine, Alley's former supervisor in Tennessee, and Brian Miller. Mr. Reed stated that he was "really worried that [Alley] has something medically wrong with him . . . ." Mr. Reed then discussed Alley with Mr. Maine and summarized those communications in an email to Belinda Johnson, Gary Bass, Pat Britton, and Chuck Stinnett. According to Mr. Reed, Mr. Maine agreed with Mr. Reed's concern claiming that "[Eastman] need[ed] to consider a medical evaluation" of Alley. Mr. Maine also communicated that Mr. Alley had "a significant amount of lost time on FMLA in the recent past." However, Mr. Maine added that Alley was "a solid mechanic in the Power Crew in Tennessee both before his FMLA and after." Mr. Maine also that Alley's "capabilities and responsibilities/job expectations were on part with TXO's Power Crew CSM responsibilities . . . ."

4

14. After January 18, 2020, Eastman did no medical evaluation, did not investigate any medical issues with Alley, nor did Eastman even discuss its belief that there was something "medically wrong" with Alley.

15. Instead, on January 24, 2020, at approximately 11:30 a.m., Alley met with Chuck Stinnett, David Reed, an HR representative, and another individual. Mr. Stinnett told Alley that as a result of an "investigation" Eastman was terminating his employment. Mr. Reed added that the skill set for working in maintenance at an Eastman plant in Tennessee and Texas were different and that despite 28 years of experience working for Eastman, and no disciplinary action, no additional training, and no formal attempts to improve his performance, Eastman concluded that Alley should be terminated. The HR representative added that Alley would be entered into the system as retired.

16. After Alley's termination, Eastman posted Alley's position and related positions on various job websites. For example, Eastman posted a position for power distribution in Longview on February 23, 2020. Alley applied for at least one of the positions at Eastman.

17. On March 13, 2020, Gary Bass in HR at Eastman was notified of Alley's claim of discrimination.

18. Eastman did not respond to Alley's application. Eastman recently renewed its search for maintenance employees at the Longview Plant posting a job for power distribution on December 9, 2020 and a job for maintenance support mechanic on December 10, 2020.

19. On information and belief, Alley was replaced by another worker who is much younger than he was at the time of his termination, who does not have a disability, and who had not taken FMLA leave.

20. On information and belief, Eastman improperly considered Alley's age, perceived disability, FMLA leave, and/or his protected activity in a manner which adversely affected the terms and conditions of his employment, resulted in his termination, and/or Eastman's decision not to rehire him.

21. Thus, Alley brings this complaint against Eastman for discrimination and retaliation with respect to his employment at Eastman.

### IV. FAMILY MEDICAL LEAVE ACT

22. Alley incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

23. Alley has satisfied all jurisdictional prerequisites in connection with his claim under the Family Medical Leave Act ("FMLA"). 29 U.S.C. § 2601 et. seq.

24. Eastman is an "employer" as defined by the FMLA.

25. During the time that Alley was employed by Eastman, he was an "eligible employee" as defined by the FMLA.

26. While Alley was employed by Eastman, he had conditions that would be defined as a "serious health condition" under the FMLA.

27. Alley was entitled to medical leave for his serious health condition as provided for in the FMLA.

28. Alley alleges that Eastman retaliated against him because he had to take leave protected by the FMLA. Eastman's actions culminated in Alley being terminated by Eastman.

29. Eastman discriminated against Alley with respect to application procedures and hiring because he had to take leave protected by the FMLA.

30. On information and belief, Eastman's violation of the FMLA was willful.

31. As a direct and proximate result of Eastman's conduct as set forth herein, Alley has suffered actual and compensatory damages, including lost wages, loss of benefits, compensatory damages, statutorily required liquidated damages, and the accumulation of attorney fees, legal costs, and interest.

32. Alley is entitled to recover from Eastman any wages, salary, employment benefits, or other compensation denied or lost to Alley by reason of Eastman's violation of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(i).  Alley is entitled to interest on the foregoing at the prevailing rate. 29 U.S.C. § 2617(a)(1)(A)(ii).

33. Alley is entitled to recover liquidated damages from Eastman equal to the amount awarded to Alley as wages, salary, employment benefits, or other compensation denied or lost to Alley. 29 U.S.C. § 2617(a)(1)(iii).

34. Alley retained the services of undersigned counsel to prosecute his claims. Alley is entitled to reasonable attorney's fee, reasonable expert witness fees, and other costs of the action. 29 U.S.C. § 2617(a)(3).

35. Alley seeks all damages available to him under the FMLA.

**V.   AMERICANS WITH DISABILITIES ACT**

36. Alley incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

37. Eastman was an employer under the Americans with Disability Act and subsequent amendments (the "ADA"). Alley was an employee of Eastman.

38. Eastman is a person within the meaning of the ADA. Eastman is engaged in interstate commerce.

39. Alley is an individual with a disability under the ADA. 42 U.S.C. § 12102. Alley has a record of an impairment qualifying as a disability, and/or Eastman regarded Alley as having such an impairment.

40. Alley is a qualified individual with a disability under the ADA. 42 U.S.C. § 12111.

41. Eastman failed and/or refused to make reasonable accommodations for Alley. Eastman failed to undertake any good faith efforts, in consultation with Alley, to identify and make a reasonable accommodations with Alley. In failing to engage in the interactive process and/or make reasonable accommodations for Alley's disability, Eastman acted with malice or with reckless indifference to the federally protected rights of Alley. Eastman interfered with Alley's rights granted and protected by the ADA, by discouraging Alley from pursuing his rights under the ADA. Eastman's failure to make reasonable accommodation to Alley's disability constitutes discrimination against Alley with respect to terms, conditions, or privileges of employment in violation the ADA. 42 U.S.C. § 12112.

42. Additionally, Eastman discriminated against Alley on the basis of his disability under the ADA with respect to advancement, training, and other terms and conditions of employment.

43. Eastman discriminated against Alley by terminating him based on his disability under the ADA.

44. Eastman discriminated against Alley with respect to application procedures and hiring on the basis of his disability under the ADA.

45. Eastman's wrongful conduct caused Alley damages. Alley seeks damages under the ADA including compensatory damages, punitive damages, attorney's fees, expert witness fees, interest, and costs.

46. Alley seeks all available damages under the ADA.

## VI. AGE DISCRIMINATION IN EMPLOYMENT ACT

47. Alley incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

48. The Age Discrimination in Employment Act ("ADEA") makes it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA also prohibits retaliating against any employee or applicant for employment based on opposition to an unlawful practice or participation in any matter related to an investigation, proceeding, or litigation related to age discrimination. 29 U.S.C. § 623.

49. Eastman is a person within the meaning of the ADEA. Eastman is subject to the ADEA.

50. Alley was an employee of Eastman under the ADEA.

51. Alley met applicable job qualifications, was qualified for the positions which he held, and performed his jobs in a manner which fully met or exceeded Eastman's legitimate expectations.

52. Eastman discriminated and/or retaliated against Alley on the basis of his age in violation of the ADEA. For example, Eastman discriminated against Alley at least by treating him differently and worse that Alley's coworkers; terminating Alley; and refusing to consider Alley for open position at the time of Alley's termination.

53. On information and belief, Eastman unlawfully retaliated against Alley and/or discriminated against Alley at least by refusing to consider him for open positions and/or refusing

to hire Alley after he had asserted claims of age discrimination and after Alley had applied for a position at Eastman.

54. On information and belief, Eastman's discrimination and/or retaliation against Alley as described herein was willful, reckless, and done with knowledge of the requirement of the ADEA.

55. As a direct and proximate result of Eastman's discrimination on the basis of age, Alley has suffered lost wages and benefits and lost employment opportunities.  Alley is entitled to receive an award of wages and employment benefits in the past – "back pay" – plus wages and employment benefits in the future – "front pay" – and other appropriate equitable relief.

56. Alley is entitled to recover liquidated damages from Eastman equal to the amount awarded to Alley as wages, salary, employment benefits, or other compensation denied or lost.

57. Alley may recover reasonable and necessary attorney's fees, expert fees, interest, and costs.

58. Alley seeks all damages available under the ADEA.

## VII.     TEXAS LABOR CODE

59. Alley incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

60. Eastman discriminated against Alley because of his age and/or disability for the reasons set forth herein.

61. Eastman's actions violated the Texas Labor Code.  *See, e.g.*, Tex. Lab. Code §§ 21.051; 21.128.

62. Alley seeks all damages available to him for Eastman's violations of the Texas Labor Code.

## VIII.   INJUNCTIVE AND DECLARATORY RELIEF

63. Alley incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

64. Alley requests the Court enter an order providing injunctive and declaratory relief including, but not limited to:

    a.    Prohibiting Eastman from engaging in unlawful discrimination and/or retaliation;

    b.    Reinstating Alley's employment with Eastman with back pay;

    c.    Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

    d.    Paying court costs;

    e.    A declaration that Eastman violated Alley's rights under state and federal law, engaged in unlawful employment discrimination, retaliated against Alley, and considered an illegal factor in terminating Alley's employment and/or deciding not to hire Alley; and

    f.    Any additional equitable relief as the Court deems proper.

## IX.   JURY DEMAND

65. Alley demands a trial by jury.

## X.   REQUEST FOR RELIEF

WHEREFORE, Alley requests that Eastman be cited to appear and answer, and that on final trial, Alley have judgment against Eastman as follows:

    a.    Wages, salary, employment benefits, or other compensation denied or lost;

    b.    Liquidated damages;

    c.    Compensatory damages;

    d.    Punitive damages;

    e.    Injunctive and declaratory relief, including but not limited to, an Order:

      i.      Prohibiting Eastman from engaging in unlawful discrimination and retaliation;

      ii.     Reinstating Alley's employment with Eastman with back pay and appropriate promotions;

      iii.    Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

      iv.    Paying court costs;

      v.     A declaration that Eastman violated Alley's rights, engaged in unlawful employment discrimination, retaliated against Alley, and considered an illegal factor in terminating Alley's employment and/or deciding not to hire Alley; and

      vi.    Any additional equitable relief the Court deems proper;

f.    Court costs;

g.    Pre-judgment and post-judgment interest at the rate set by law; and/or

h.    All other legal or equitable relief this Court deems proper.

Respectfully submitted,

/s/ Eric M. Albritton

Eric M. Albritton
Texas State Bar No. 00790215
ema@nbafirm.com
Shawn A. Latchford
Texas State Bar No. 24066603
shawn@nbafirm.com
**NELSON BUMGARDNER ALBRITTON P.C.**
204 N. Fredonia Street
Longview, Texas 75601
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

*Counsel for Plaintiff*
*Steven Alley*

12